FÉLIX MEJÍAS SANTANA, ADMINISTRATOR OF ECONOMIC STABILIZATION, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, LUIS R. POLO, JUDGE, Respondent. GERMÁN VÉLEZ POSADA, DR. BASILIO DÁVILA ET AL., Interveners.

No. 2028. Argued October 1, 1953.—Decided October 29, 1953.

*Juan T. Peñagarícano* and *Rafael A. Rivera Cruz* for petitioner. *Miranda Esteve & Martínez Álvarez, Jr.,* for intervener *Vélez Posada. Celestino Iriarte* and *F. Fernández Cuyar* for intervener *Dávila.*

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The petition for certiorari, filed in this Court by Félix Mejías Santana, Administrator of Economic Stabilization,

posed the question of whether in leasing the De Diego Hotel located in Santurce, what was leased was the commercial or business premises, or the business itself, and therefore outside the scope of the Reasonable Rents Act (Laws of 1946, p. 1326), by virtue of the ruling in *Orsini* v. *Sánchez*, 67 P.R.R. 809 and *Ortiz* v. *Cesaní*, 68 P.R.R. 382.

After a hearing before the former Insular Rent Administrator, now substituted for by the Administrator of Economic Stabilization, where documentary and oral evidence were introduced, the Administrator decided that what was leased was the business premises and not the business itself, and proceeded to reduce the rent from $600 to $420 monthly, to be paid by the lessee, Dr. Basilio Dávila, to Justo Reyes, David González and Julio González, sublessors and original lessees of the lessor Germán Vélez Posada, owner of the hotel and of the building. The original lessor, Vélez Posada, filed a petition for review on December 7, 1949 before the former District Court of San Juan. Finally, on March 6, 1953 the San Juan Part of the Superior Court rendered an opinion and judgment granting the writ of review and vacating and setting aside the decision of the Administrator. The San Juan court understood and held that it was not a question of leasing a building but a hotel business. To review the judgment the Administrator of Economic Stabilization has filed the present certiorari proceeding.

In *Orsini* v. *Sánchez, supra,* it was held that a lease contract of an already established and going concern, with the machinery and equipment necessary for its operation and exploitation was not subject to the protection of the Reasonable Rents Act since it was not a question of a mere lease of a building. The opinion stated, in part, the following:

"The Reasonable Rents Act was approved for the purpose of remedying an emergency situation created by the great demand for, and scarcity of, housing accomodations and premises for businesses, which arose from the state of war. The 'rental control,' which consisted in the fixing by the adminis-

.trator of maximum rentals and in the restriction of evictions, was established with a view to protect the tenants against the unjust practice of the lessors of demanding excessive and unreasonable rents, and to prevent the tenants of dwellings or commercial premises from being evicted without being able to find other premises in which to establish their dwellings or to resume their commerce, business, or industry. The reasons which justify the intervention of the police power of the State for the restriction of evictions do not exist in the present case. The lessee Sánchez Parra was not the owner of the business established in the gasoline station. All the things existing therein and used for the operation of the business—with the exception of the stock of goods kept for sale—are owned by the lessor Orsini. And we have already seen that, in accordance with the terms of the contract, the lessor is bound to buy said stock for its just value. The subject matter of the lease in this case is, therefore, a gasoline station with the machinery and equipment necessary for its operation and exploitation. What has been leased is a going concern which from the date of the lease was to be operated by the lessee instead of by its owner. *The building or 'garage' is purely incidental to the business established therein;* since possibly the lessee would not have leased said garage unless it included the machinery and equipment installed therein and the station business already established by the lessor." (Italics ours.)

As we have already stated, we must now turn to determine whether the cases cited apply to the one at bar. At the hearing before the Administrator three public deeds were admitted in evidence. The first, dated May 24, 1948 is entitled "Lease of Business," executed by Germán Vélez Posada as lessor, and Justo Reyes Morales and David and Julio González Fernández as lessees. It is stated that Vélez Posada is the owner of a commercial establishment located at De Diego Avenue, in Santurce known as De Diego Hotel, "engaged in the hotel business"; that the "hotel business" consists of two buildings with several bedrooms, all of them with lavatories and closets as well as electrical installation and lamps, and installation and distribution of individual bells for each room; that for several years the buildings have been

devoted to the hotel business; that the lessor "by the present deed rents to the aforesaid lessees the hotel business described in the recital of this deed, with all its uses and rights, including the use of the name 'De Diego Hotel' with the good will that the same has in the market"; that the rental "of the establishment" shall be $600 monthly; that the lessor "shall pay the territorial taxes imposed or that might be imposed on the immovable where the leased business is located"; that the lessees shall pay for the services of water, light and telephone or any other public service "in connection with the leased business"; that the improvements that "the lessees might make in the premises and the leased business shall remain at the termination of the contract to the benefit of the lessor without the latter having to pay any sum as compensation therefor, it being stated that this refers solely to the improvements which are not susceptible to removal from the building at the termination of the lease without damaging the structure thereof or that because of their nature are an integral part of the immovables leased." In other parts of the deed reference is made to the "leased business" and the premises "where the leased business is situated [or located]," but reference is also made to "the leased premises." Clause No. 15 provides that "the lessees may dispose of part of the buildings leased for any other kind of business germane or related to the hotel business and they bind themselves not to make any changes whatsoever in the structure of the buildings where the business object of this lease is located without the written consent of the lessor."

On the same day that this "lease of business" was executed the lessor and the lessees executed another deed of "Sale of Chattels" whereby Vélez Posada sold to the lessees all the personal property and furniture of the hotel, including chairs, pillows, tables and kitchen utensils.

A few months later the original lessees executed a deed of "Sale of Chattels and Sublease," in favor of Dr. Basilio

Dávila, as sublessor and purchaser, with respect to the same De Diego Hotel and to the movables therein.

At the hearing before the Administrator, Vélez Posada testified that he bought the business and established therein a hotel, with the corresponding expenses, including furniture of each room, electric installation of lamps and bells, hotel signs; that when he leased "the business" the same employees remained there; that "the business" was successful and acquired good will; that the lessees continued with his same license until June 1948, and on that date they renewed the license in their name and continued in the hotel business; that at the time of the lease the hotel was a going concern; that the lessees furnished bonds in their name for the services of water, gas and telephone; that most of the furniture of the hotel was sold to the lessees, but the electric installations, including the bells were included in the lease contract; that the lessees paid nothing for the good will and that such good will was a part of the lease.

We understand and hold that the evidence presented to the former Rent Administrator afforded a rational basis to decide that the purpose of the lease was primarily the renting of the premises where the hotel business was located, and not the business itself independently of the building. The administrative view should not be replaced by the judicial point of view except in the absence of elements of proof which may reasonably support the order of the Administrator. Now then, it is true that the parties to the original lease repeatedly and expressly referred to "the hotel business" as the object of the lease. Naturally, in order to pass on the nature of the relation, the expressions used by the parties themselves are very important. But they do not constitute the sole and exclusive factor in determining the real content of the object of the lease. They are exceptionally relevant, but not definitively conclusive. For the purposes of determining whether it was intended to lease the business premises

or an independent business, the contract may not be characterized solely by the labels used by the parties, but by its object or real content. Ildefonso Bellón Gómez, Justice of the Supreme Court of Spain, in his work *Régimen Legal de los Arrendamientos Urbanos*, p. 33. A different result would permit the parties to characterize artificially the nature of the relation, contrary to reality, for the purpose of depriving the Administrator from lawfully exercising his legal functions and powers. The names or labels used by the parties could defeat and render inoperative the scope of action of the Administrator under the law. We must determine the reality of the content of the relations, according to the evidence introduced. In *Orsini v. Sánchez, supra,* in holding that the contract involved the lease of the business and not of the business premises, it was stated that the building was purely incidental to the gas station business. That is not the case of a hotel. Here the building is not only an integral part of the hotel business, but it constitutes its essential basis. The business cannot be separated from the structure. The hotel is better defined by the building and the bedrooms as part of it, than by the personal property, equipment, utensils and articles contained in the building. In a gas station the economic utility of production is derived from the use of the utensils and property within the structure. In a hotel the commercial productivity arises from the building itself. The building is not an incidental part but rather the vital structure of the business.

In the *Orsini* case the personal property, equipment and instruments used directly in the business were the object of the lease contract. When the objects which formed an integral part of the business were leased, a business was being leased. In the case at bar the equipment and the furniture were not leased. They were absolutely sold to the lessees. Only the building itself, with the electric installations was leased. It was the premises and not exclusively a business

independently of the premises which was leased. The difference between both may be measured by some concepts, as they appear in the afore-cited work *Régimen Legal de Arrendamientos Urbanos*, at pages 28 to 30. The lease of a business arises from the lease of chattels which form "a patrimony with life of their own, in operation, with an independent economic value, in active production... and that business ought to have reality by itself, with a life of its own and independence (from the building) to be self-sufficient." If it is intended to lease a business and not the business premises, the lessor must deliver, under the lease, "whatever elements are necessary for its normal operation, and in the absence of one of them, the purpose of the lease is defeated." The lease of an independent business involves "a complexity of material elements that complement each other, destined to an industrial use and apt to operate coordinately, that is, a patrimonial unit organized for production purposes." Such definitions contemplate the lease of a gas station where the equipment and instruments used in the station are leased, but they do not apply to the lease of a hotel, limited to the building and to the electric installations, without including in the lease the furniture, equipment and personal property used in the operation of the hotel.

■ It is alleged that the lease included the good will of the hotel, thereby implying that a business was leased. But the good will, in a hotel, may be attached to the building itself, and not alone to the business considered as an independent patrimonial unit.

■ The decision of the Administrator is supported by the provisions of the Reasonable Rents Act and by the Rent Regulation for Commercial Premises, which has the force of law. Parapraph (b) (10) of § 1 of the Regulation, provides, in part, that the term "commercial premises" means any structure leased for commercial or industrial purposes including among others, hotels and boarding houses. This

provision is not contrary to the law. Section 22 of the Act provides, in part, that "business premises" includes any premises or building used for business. Section 4 of the Act provides in part, that "Neither shall the provisions of this Act be applied to hotels or boarding houses, insofar as concerns the relation between the person operating said hotel or boarding-house business and the lodger or tenant thereof." By excepting from the scope of the law the relation between the hotel owner and his lodgers or tenants, that means that the lease relations between the owner and other persons who are not lodgers, as, for example, with the lessees in the instant case, are covered by the Act.

Since the former Rent Administrator acted correctly in deciding that it concerned the lease of a business premises, and not of a business, and therefore, in ordering a rent reduction, the judgment rendered by the San Juan Court should be vacated and set aside and another judgment should be rendered instead affirming the decision of the former Rent Administrator.

Mr. Justice Marrero did not participate herein.